# In the United States Court of Federal Claims

No. 18-1539
(Filed: August 17, 2023)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

PLATINUM SERVICES, INC.,

*Plaintiff*,

v.

THE UNITED STATES,

*Defendant*,

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Anthony J. Marchese,* Washington, DC, for plaintiff. *Carol L. O'Riordan*, of counsel.

*Michael D. Snyder, Trial Attorney, for defendant,* with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, United States Department of Justice, Commercial Litigation Branch, *Patricia M. McCarthy*, Director, *L. Misha Preheim*, Assistant Director, and *George Thomas, Jr.*, General Services Administration, of counsel.

## OPINION

BRUGGINK, *Judge*.

This is a suit brought by Platinum Services, Inc. ("Platinum") seeking payment for transporting 2,532 shipments of household goods for the Department of Defense ("DOD") between 2016-2018. Pending are cross-motions for summary judgment on the merits. Those motions are fully briefed, and oral argument has been held. Because neither party had the legal right to alter the payment term of the contracts, both motions must be denied.

<u>BACKGROUND</u>

I. Factual History

One of the ways that DOD arranges for the shipment of service members' household goods ("HHGs") is through a process called the Direct Procurement Method ("DPM"). To facilitate this process, DOD's United States Transportation Command ("TRANSCOM") collects offers on a rolling basis, known as "tenders," to ship these goods from transportation service providers (cargo carriers or brokers known as "TSPs"), such as Platinum.  The tenders contain the details of the service offered, such as: origin and destination points; the type of equipment to be used (e.g., capacity and or truck/trailer type); charges for loading and unloading without assistance by the shipper or consignee; and rates to be charged for specifically identified accessorial services (e.g., expedited service; exclusive use of a carrier's equipment; detention of equipment / waiting time; etc.). Tenders can also contain rate qualifiers, which are minimum weights to be billed under that tender.  Central to this dispute are the equipment types and rate qualifiers associated with the various tenders at issue.

As the need arises, local DOD shipping offices—Joint Personal Property Shipping Offices ("JPPSOs") or Personal Property Shipping Offices ("PPSOs")—utilize the available tenders to place orders for transportation services via the issuance of a government bill of lading ("GBL").  The GBLs, which memorialize the government's acceptance of an active tender to ship HHGs, contain various details and instructions to TSPs: origin; destination; scheduled pick-up date; freight charge collection and payment information, including terms (i.e., prepaid, collect, or third-party billing); approximate weight of the shipment; number of packages, cartons, or crates; and liability limitations. Each GBL at issue here referenced a particular tender number from Platinum that corresponded to a level of service (e.g., equipment) that the PPSOs found appropriate for the HHGs to be shipped.

DOD chooses tenders on a "best value" basis, meaning the tender option that "provides the greatest overall benefit in response to the

requirement"[1] is chosen.  This can be a combination of price and non-price related factors.  Here, however, the government has identified only the price term as relevant.

At issue in this case are 2,532 shipments awarded to Platinum because it offered the least expensive option.  All the shipments were fully performed. Of those shipments, the vast majority had GBLs referencing tenders with a flat-bed vehicle (equipment code series AF1, AF2, AF3) or a low clearance van or a van with rollers equipment code (series AV4, AV6, AV8).[2]  Neither set of these GBLs included a minimum weight qualifier. There is no dispute that the GBLs were valid and that the shipping services were performed in full.  Plaintiff, however, billed the government at rates higher than those anticipated by the GBLs, and the government paid less than is called for in the GBLs.

Rather than strictly adhere to the equipment and rates referenced in the GBLs, plaintiff sent the shipments via standard van trailers, rather than the specialty vans or flatbeds listed on the bulk of the tenders.  It then invoiced based on its active tenders that provided for shipment via standard van (equipment code series AV1,AV2,AV3), which all happen to include minimum weight qualifiers.  As defendant points out, only a few of the GBLs referenced tenders that included rate qualifiers.  The result is that plaintiff invoiced the government for approximately $5,000,000, a drastic inflation (by a factor of nearly 10) of what it would have cost if billed pursuant to the tender rates referenced in the GBLs.

Prior to payment, DOD performed an audit and found that Platinum had overcharged it by nearly $4.4 million based on the difference between tenders associated with the equipment type ordered and that which was provided.  The standard van tenders billed by plaintiff greatly inflated the

---

[1] Defense Transportation Regulation ("DTR") Definitions. DTR 4500.9-R § 77. (April 24, 2017).

[2] We reference the quantity of these groups of shipments in general terms because the numbers provided by the parties do not add up to the 2,532 shipments identified in the Complaint.  That incongruity is not important at this juncture.

weight billed for due to the operation of the minimum rate qualifiers.  DOD viewed those charges as unauthorized and rejected them.  Beyond that, DOD opted to apply its "Alternation of Rates" policy, by which it claims the right to choose the lowest rates available for an origin and destination pair from a TSP for each shipment, even if not listed on the GBL, the result of which was plaintiff being paid around $400,000, $4.6 million less than what it had invoiced.[3]

II. Procedural History

After receiving a fraction of what it billed, Platinum filed the present suit on October 4, 2018. The court's rules prescribe special procedures for these "common carrier" cases. *See* RCFC App. I.  In addition to the complaint and answer process, Appendix I provides for the filing of a request for admissions by the plaintiff, a response from the government, which is to include any amounts that the government agrees are owing, and a counter statement of any issues remaining.   Should plaintiff not accept the government's response, the rules anticipate that the court will schedule a "pretrial conference" for the purpose of

> (1) resolving all issues and recording an agreement for the entry of judgment or for dismissal of the complaint or any part thereof, or (2) segregating the carrier's bills in dispute from those not in controversy and fixing the amount that either party would be entitled to recover in the event of a decision in its favor, and/or (3) taking any other action that may aid in the prompt disposition of the suit.

*Id.* rule 3(b).  To that end, we held a status conference on June 6, 2019, to discuss the process for resolving the case and, per the agreement of the parties, entered a deadline for defendant to file a motion for summary judgment on liability.  ECF No. 18.  The government filed a combined motion to dismiss and for summary judgment on August 12, 2019, arguing that plaintiff lacked evidentiary support and that, in any event, the government properly alternated to the lowest applicable rate.  Before that

---

[3] These numbers are approximate and calculated from adding up the numbers from GSA's audit analysis filed in this court on June 24, 2020. Neither party provides the total from the initial invoices in their briefs or replies.

motion finished briefing, however, defendant moved (ECF No. 27) to remand the case to the General Services Administration ("GSA") for further factual development and possible narrowing of the issues. The motion was subsequently granted, and the case remanded to GSA on January 22, 2020. The remand was completed on June 26, 2020, and defendant filed a 17-page remand report from GSA, wherein GSA provided an analysis of the claim decisions by individual shipping and paying offices and provided its own figures for DOD's liability. GSA denied 2,406 of Platinum's claims and concluded that defendant was overcharged by $4.4M.[4] Plaintiff does not accept those findings as legally or factually correct.

The parties then undertook fact discovery, and, on April 29, 2022, plaintiff filed a motion for summary judgment seeking $4,669,606.72 for the remaining balance owing pursuant to its prior billing of the government. Defendant filed a cross-motion for summary judgment and response to plaintiff's motion for summary judgment on June 10, 2022, requesting that the court defer to the recommendations of GSA and have Platinum be paid only what it would have been according to the initial tenders and the subsequent alternation of rates.

After the conclusion of oral argument on those motions, held on October 19, 2022, the parties requested the court stay the case to allow them an opportunity to settle.  The stay was lifted in January 2023 after the parties reported the failure of that process.  We held a supplemental oral argument in this case, and one of the related dockets, 19-1714C, on April 18, 2023. The matter is now ripe for resolution.

<u>DISCUSSION</u>

The parties agree that the GBLs were valid contracts and yet both claim the right to alter the payment terms pursuant to regulatory provisions. Plaintiff argues that it may charge under tenders that correspond to the equipment it in fact used instead of what was agreed upon because the use of closed vans was necessary for the safety of the shipments at issue. The government responds that Platinum had no right to unilaterally raise the prices, and that, in any event, DOD has the right to alternate the rate down to

---

[4] GSA differed from DOD's pre-payment audit by finding an additional $979.46 owing to Platinum.

the lowest tender on file from Platinum for a particular origin and destination pair.

I. Standard Of Review

The court will grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). Material facts are those facts "that could 'affect the outcome' of the litigation." *Georgia Power C. v. United States*, 143 Fed. Cl. 743, 746 (2019). The questions presented by the parties are largely legal. Though there is some imprecision as to the specific number for certain types of shipments, those facts are not material to the legal issues. Our resolution of the legal questions, however, precludes summary judgment for either party.

II.  Platinum Does Not Have The Right to Unilaterally Change The Terms Of The Contract

When it billed for the services performed, Platinum changed the rates for nearly all of the shipments, increasing cost to the government by approximately 92% above what was called for in the GBLs. Defendant claims it should have been invoiced for only around $400,000, but it was instead charged almost $5 million.  For Platinum to prove entitlement to the amount it seeks, it must demonstrate a contractual or other legal right to the charges it seeks.

Platinum argues that it has the right to bill the government pursuant to more expensive tenders because it had a duty to protect the shipments from the elements and that closed van transportation was thus necessary and appropriate. Having hauled the shipments by closed van, it billed based on its tenders on file with DOD for that type of transportation.[5]  Those tenders included minimum rate qualifiers, which drastically upped the charges to the government.  There is no dispute that the GBLs themselves—the written contracts that both parties agree govern, at least as a starting point—provide

---

[5] We note that, according to defendant, these more expensive tenders had not been provided to the local offices, but rather had been submitted only to DOD's centralized, national tender system.  That is not relevant to the issues in this case, but it is central to one of the other cases brought by plaintiff, and we deal with it there.

for no such price escalation.  Platinum instead cites the MFTURP[6], which requires TSPs to "furnish vehicles with all necessary equipment to safely transport freight in conformity with applicable federal and state safety regulations for which the shipper has requested transportation and shall be responsible for properly securing the cargo and protecting it from exposure to the elements." MFTURP § B.II item 47.1 (2016).  That rule continues, stating that equipment exceeding "minimum specifications necessary to safely transport freight shall be considered as furnished by the TSP for its own convenience." *Id.* item 47.2.  "If the vehicles and/or equipment furnished by the TSP is more expensive than the equipment ordered, the charges shall be assessed on the basis of what the shipper ordered." *Id.* Plaintiff urges that the closed vans were necessary and did not exceed the minimum specifications for the job.  Plaintiff argues that, because the government has not presented any evidence that the vans were unnecessary, summary judgment for Platinum is appropriate.[7]

Defendant responds that Platinum does not have the right to recover under payment terms to which the government did not assent. Absent an "objective manifestation of voluntary, mutual assent," *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003), there is no meeting of the minds and no contractual duty to pay the inflated charges.  We agree with that general sentiment, but the question remains whether the MFTURP otherwise

---

[6] The Military Freight Traffic Unified Rules Publication ("MFTURP"), is a publication of the Army's Military Surface Deployment & Distribution Command that establishes policy and specific rules that govern the relationship between DOD and TSPs.  It acts in concert with the Defense Transportation Regulation, a higher level regulation that governs the movement of freight and HHGs by carriers for DOD.

[7] Plaintiff also makes the argument that DOD did not order any particular equipment when it issued the GBLs.  Even if we credited that assertion, and we do not, and the government conceded the point, that would not change our analysis.  The GBLs are not silent as to price; they include a reference to a tender that provides a price per hundredweight to move the HHGs.  It is thus incumbent on plaintiff to prove either an agreed upon modification of that price term or some other legal right to go beyond it.

gave plaintiff the right to bill for the more expensive equipment used.  We hold that it did not.

As defendant rightly points out, the cited MFTURP provisions define the TSPs' duty to safely transport, which implies the duty to use equipment necessary to do so.  Nowhere in item 47, however, does the rule grant a right to charge beyond what the government agreed to pay.  In fact, the rule explicitly states otherwise when it clarifies that, when more expensive equipment is furnished by the TSP, "charges shall be assessed on the basis of what the shipper [(JPPSO)] ordered."  *Id.*  Thus, under general contract principles, if Platinum thought that more expensive equipment was necessary and wanted to charge more for it, it would have had to get the government's assent to the new price term prior to performance.  Not having done so, it cannot recover beyond what the contract called for.[8]

## III.  The Government Does Not Have The Right To Alternate To Platinum's Lowest Rate On File

Although our holding resolves most of plaintiff's claims, defendant also argues that DOD has the right, pursuant to regulation, to alter the payment term, or "alternate" it, down to the lowest rate on file from a TSP for a particular destination.  DOD and GSA both applied this principle in coming up with the amounts that they found owed to Platinum.  If alternation is inapplicable here, however, presumably plaintiff is owed more, albeit not a lot more, than it was paid.

DOD alternated the rates down to the cheapest tenders that Platinum had on file in DOD's national tender database.[9]  The government defends

---

[8] Item 47.2(a) also states that TSPs "will notify the shipper to receive prior approval" for any substitution of equipment that exceeds the minimum specifications necessary.

[9] We note the inherent inconsistency with defendant's position in this case that DOD ought to be able to search its Global Freight Management ("GFM") system to come up with lower cost tenders and its position in case 19-1714C that it is only the tenders on file at the local offices that are applicable offers, not the GFM.

that practice, citing MFTURP section A.III.D, which it argues gives DOD the right to alternate a TSP's rates to produce the lowest charge:

> 1. Tender rates/charges (regardless of rate qualifier) that apply between same points of origin and destination will alternate to produce the lowest charge to DoD.
>
> . . . .
>
> 3. In no event shall charges submitted under any tender be in excess of charges based on the TSP's lowest rate available to the general public in either common or contract rates, except 500,000 series tenders, or be in excess of charges based on rates otherwise tendered to the Government by the Contractor for the same type of service.
>
> 4. Alternation of rates does not apply between Mode T—Towaway and Mode B—Motor tenders.

MFTURP § A.III.D.1, D.3-D.4 (2016). Defendant also cites MFTURP section A.IV part II.2, where it cautions TSPs against "fil[ing] duplicate freight service tenders for the same rate channels, i.e., similar origins, destinations, commodities, equipment codes, etc., in more than one tender." The only limit to alternation, argues defendant, is the destination and origin, and the two modes (T and B) listed in subsection 4 of section A.III.D. Because vans and flatbeds are both mode B tenders, alternation was appropriate here, says defendant.

Platinum responds that transporting by van trailer is not "the same service" as by a flat-bed vehicle. It draws this limitation on alternation from the MFTURP provision that "[i]n no event shall charges submitted under any tender . . . be in excess of charges based on rates otherwise tendered to the Government by the Contractor for the **same type of service**." MFTURP § A.III.D.3 (emphasis supplied). What this implies is that subsection D.3 is modifying D.1 to add a limitation on the government's right to alternate based on the type of service. Plaintiff draws further support from section A.IV where the caution to TSPs against filing duplicate tenders includes examples of what a duplicate tender is, including "equipment codes." *Id.* § A.IV part II.2.

Although defendant disagrees with the premise—it believes no limitation applies to alternation outside of the origin-destination pair and the two modes specifically called out in subsection D.4—it argues in reply that flatbeds and vans are the same type of service because they are both mode B forms of transportation. Defendant also highlights the tension between plaintiff's positions on the two central issues: on the issue of whether plaintiff can upcharge the government, Platinum avers that the GBLs do not mandate any particular equipment type, but with regard to the question of alternation, it urges the importance of the equipment code associated with the tenders annotated on the GBLs.

Although we note that plaintiff's positions regarding the importance of the GBLs' price terms are inconsistent, we agree with its reading of the MFTURP's alternation rules. The rules make little sense if the government has *carte blanche* discretion to pay at a cheaper rate even after it orders a higher level of service. Like plaintiff, we read section D.III.1 in conjunction with D.III.3 and section A.IV part II.2, to mean that TSPs are on notice that they will be paid based on the lowest cost tender for the same service, which means, *inter alia*, the same or similar equipment.

A contrary interpretation would lead to an absurd result where one provision of the MFTURP places a duty on the carrier to use the equipment necessary to safely ship, establishing a minimum level of service at the rate indicated by the GBL, but then another gives the government the right to pay for an entirely different, lesser level of service. Under such an interpretation, only the cheapest tender would ever control, and TSPs would not be incentivized to offer different levels of service or price to the government. The result would be a less cost efficient DPM HHG shipping program. Further, such a result would be directly at odds with the government's urging in all of these cases that the regulations and rules should be read in light of the paramount importance of maintaining the government's ability to achieve the "best value," something it could not do if offerors were incentivized not to offer a range of prices and services. A rule of reason must be applied, and here it mandates that alternation applies only between tenders for the same level of service.

IV. The Result

Neither party views itself as bound to the initial agreement indicated in the GBLs.  Plaintiff up charged for a level of service, or in some instances only a higher price, to which the government did not agree.  DOD, for its part, alternated rates to plaintiff's lowest priced tenders regardless of the service that DOD ordered.  Neither result withstands legal scrutiny as neither party had the right in these circumstances to change the payment term.  To the extent that plaintiff has been paid less than the amount mandated by the GBLs, defendant is liable.  Plaintiff is not entitled, however, to any amount beyond that, nor is the government able to alternate below the contract price.

<u>CONCLUSION</u>

Because neither party had the right to change the payment terms, both motions for summary judgment must be denied.  Judgment need only be deferred pending an accounting of any sums remaining due to Platinum pursuant to the tender rates listed on the GBLs.  Accordingly, the following is ordered:

1.   Plaintiff's motion for summary judgment (ECF No. 62) is denied.

2.   Defendant's cross-motion for summary judgment (ECF no. 65) is also denied.

3.   The parties are directed to confer and file a status report within 30 days of this opinion regarding the amount for judgment.

<u>s/Eric G. Bruggink</u>
Eric G. Bruggink
Senior Judge

11